**Opinion issued March 7, 2023.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00822-CV

———————————

**HASSELL CONSTRUCTION CO. INC., DERIVATIVELY BY AND THROUGH ITS SHAREHOLDER, ROYCE HASSELL; R. HASSELL & COMPANY, INC., AND R. HASSELL BUILDERS, INC., Appellants**

**V.**

**SPRINGWOODS REALTY COMPANY, SPRINGWOODS REALTY, INC., HARRIS COUNTY IMPROVEMENT DISTRICT #18, AND WALTER P. MOORE & ASSOCIATES, INC., D/B/A WALTER P. MOORE, Appellees**

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2016-85276

## MEMORANDUM OPINION

Appellants Hassell Construction Co. Inc., derivatively by and through its

shareholder, Royce Hassell, R. Hassell & Company, Inc., and R. Hassell Builders,

Inc. (collectively, "Appellants") appeal the trial court's summary judgment in favor of Appellees Springwoods Realty Company, Springwoods Realty, Inc., Harris County Improvement District #18, and Walter P. Moore & Associates, Inc., d/b/a Walter P. Moore (collectively, "Appellees"). In two issues, Appellants argue (1) the trial court erred by granting summary judgment in favor of Appellees based on limitations because Appellees failed to prove conclusively when Appellants' causes of action accrued or, alternatively, there is a genuine issue of material fact regarding the accrual dates precluding summary judgment; and (2) the trial court abused its discretion by denying Appellants' motion to abate the case in favor of Appellate Cause No. 01-17-00154-CV, an appeal involving the same set of facts and claims for damages, which another Panel of this Court previously decided. *See R. Hassell & Co., Inc. v. Springwoods Realty Co.*, No. 01-17-00154-CV, 2018 WL 1864627 (Tex. App.—Houston [1st Dist.] Apr. 19, 2018, pet. denied) (mem. op.).

We affirm the trial court's judgment.

## Background[1]

This appeal is one of the latest judicial proceedings arising from three lawsuits involving the same construction project and contract. In August 2011, the Harris County Improvement District #18 ("District") awarded Hassell Construction

---

[1] The facts in this section are taken directly from this Court's opinion in *R. Hassell & Co., Inc. v. Springwoods Realty Co.*, No. 01-17-00154-CV, 2018 WL 1864627, at *1–4 (Tex. App.—Houston [1st Dist.] Apr. 19, 2018, pet. denied) (mem. op.).

Company, Inc. ("HCCI") a contract for roadway construction of a project in Harris County, Texas ("Contract"). The project involved the construction of Springwoods Village Parkway and related water and sanitary sewer lines, paving, and traffic and drainage improvements in connection with ExxonMobil Corporation's campus in Houston, Texas ("Project").

HCCI and the District entered into the Contract[2] with HCCI acting as the "Contractor" and the District as the "Owner." Pursuant to an attached "Special Condition" document, Springwoods Realty Company ("Springwoods"), the Project developer, was also considered an "Owner" for certain purposes under the Contract.[3] Springwoods was an "Owner" for purposes of approving requests for, and making payments to, the Contractor for any portion of the Contract price and "for paying all or any damages that might ever be due, including any costs associated with any change orders to the Contract." Costello, Inc. ("Costello"), an engineer on the

---

[2]    The Contract also includes the Contract Documents attached to the Contract, including the Standard General Conditions of the Construction Contract.

[3]    On December 31, 2014, Springwoods Realty Company (1) quitclaimed its interest in the subject Project to a newly formed entity, Springwoods Realty, Inc., and (2) transferred and assigned to the new entity the right, title, and interest in and to all contracts to which Springwoods Realty Company was a party and delegated all duties and obligations owed by Springwoods Realty Company under those contracts to Springwoods Realty, Inc. In 2015, Springwoods Realty Company, which had changed its name to Springwoods Old Realty Company, voluntarily dissolved. For purposes of this opinion, we refer to Springwoods Realty Company n/k/a Springwoods Old Realty Company and Springwoods Realty, Inc. collectively as "Springwoods."

Project, designed the water and sanitary sewer systems and was tasked with approving or denying any submitted change orders.[4] Walter P. Moore & Associates, Inc. ("WPM"), who also provided engineering and design services for the Project, designed all other improvements on the Project.

According to HCCI, the Contract contained material provisions integral to the timely completion of the Project's scope of work, including provisions that "time was of the essence" and that "HCCI would be paid for the performance of the Scope of Work required by the drawings." HCCI alleged that, after its work on the Project started, the District and Springwoods made over 500 revisions to the construction plans, which materially changed the scope of work, the Contract price, and the timeline of the Project. Appellants contend that although they properly submitted delay claims based on these revisions to WPM and Costello pursuant to the dispute-resolution procedures in the Contract, the District and Springwoods refused to pay for the changes and further accelerated the work, resulting in damage to HCCI. The parties attempted to resolve their disputes through the Contract's dispute-resolution process. After their attempts proved unsuccessful, Appellants elected to submit their

---

[4] Hassell also named Costello as a defendant in the underlying lawsuit, but it later nonsuited its claims against Costello prior to the trial court's final judgment. Consequently, the trial court did not rule on Costello's motion for summary judgment, and Costello is not a proper party to this appeal. *See Gray v. Allen*, 41 S.W.3d 330, 331 n.2 (Tex. App.—Fort Worth 2001, no pet.) (stating "appellee" must be party to final judgment and someone against whom appellant raises issues or points of error in its appellate brief).

4

payment claims to mediation, as permitted under the Contract. The parties mediated their delay claims unsuccessfully on July 2, 2012.

On July 26, 2012, HCCI sued the District and Springwoods based on their refusal to pay HCCI's delay claims. Appellants contend that although HCCI filed suit on July 26, 2012, none of the parties to the lawsuit acted as if negotiations were at an impasse or that the Contract had been terminated. According to Appellants, they kept performing under the Contract through December 28, 2012. Appellants allege that they continued to negotiate their delay claims even after mediation proved unsuccessful, citing to correspondence exchanged between various parties from July 2012 until July 2013, when Appellants were officially removed from the Project.

## A.    First Lawsuit (Trial Court Case Number 2012–42981)

On July 26, 2012, HCCI filed suit against the District and Springwoods ("First Lawsuit"). HCCI asserted claims against Springwood and the District for breach of contract and against Springwoods for fraud. In the alternative, HCCI asserted claims against the District under Texas Local Government Code section 271.153(a)(2),[5] and against Springwoods for assumpsit, quantum meruit, and unjust enrichment. The District and Springwoods each filed a third-party petition against WPM, who had provided engineering and design services on the Project. The District brought claims

---

[5]    TEX. LOC. GOV'T CODE § 271.153(a)(2) (governing breach-of-contract damages against local governmental entities, including amounts owed for change orders).

5

against WPM for breach of contract, breach of warranty, and negligence seeking indemnity. Springwoods asserted a negligence claim against WPM, also seeking indemnity. WPM, in turn, filed a third-party petition against Costello seeking contribution.

On September 15, 2014, R. Hassell & Company, Inc. ("RHC") and Hassell Builders, Inc. ("RHB")[6] filed their First Petition in Intervention, alleging that RHC, RHB, and HCCI were partners, noting that its "joint venture relationship" with HCCI was disclosed to the District and Springwoods. RHC and RHB asserted that they provided project management and performed work on the Project using RHC's and RHB's equipment and personnel, and HCCI submitted RHC's and RHB's progress-payment reports to the District and Springwoods. HCCI, RHC, and RHB then split the proceeds received from the Project, with "99% to RHC [and RHB] and 1% to HCCI."

RHC and RHB further alleged that HCCI had filed suit against Springwoods and the District "under the name HCCI representing the partnership." RHC and RHB asserted that, "as a partner of HCCI," they had a justiciable interest in HCCI's

_____

[6]     The First Petition in Intervention also included as intervenors: R. Hassell Holding Company, Inc. and Royce and Sylvia Hassell. The intervenors explained that RHC, RHB, and R. Hassell Holding Company, Inc. are corporations owned by Royce and Silvia Hassell and managed by Royce Hassell, who is President of each of the companies. HCCI is also owned by various Hassell family members, including Royce Hassell. RHB, RHC, and HCCI, derivatively and through its purported shareholder Royce Hassell, are the Appellants in the present appeal.

6

lawsuit, because they could have brought all or part of the original suit in their own name and RHC's and RHB's claims "ar[o]se from the claims" made by HCCI. RHC and RHB also added conspiracy claims against the District, Springwoods, and the law firm of Coats Rose, which previously represented HCCI. RHC and RHB alleged that Coats Rose had tortiously interfered with RHC's and HRC's relationship with HCCI. RHC and RHB also filed "cross-claims" against HCCI for breach of fiduciary duty and asserted that HCCI, "acting in concert with" Coats Rose, had intentionally inflicted emotional distress on the Hassell family.

HCCI filed a general denial to RHC's and RHB's First Petition in Intervention, including a verified denial that a partnership existed between HCCI, RHB, and RHC. HCCI also moved to strike RHC's and RHB's intervention arguing that (1) RHC and RHB had waited over two years to intervene in the suit, (2) RHC and RHB lacked a justiciable interest in the lawsuit because HCCI, and not RHC or RHB, had been awarded the Contract and designated as Contractor on the Project, (3) RHC and RHB lacked standing because they were not a party to the Contract and could not bring suit in their own name, (4) even if RHC or RHB had damages apart from HCCI, those claims would still need to be asserted by HCCI as pass-through claims and could not be asserted directly by RHC or RHB, and (5) RHC's and RHB's intervention multiplied the issues excessively by inserting RHC and RHB and their partnership allegations into the lawsuit. On October 20, 2014, after a hearing, the

7

trial court struck RHC's and RHB's First Petition in Intervention. RHC and RHB did not appeal the trial court's order on their First Petition in Intervention.

On February 2015, RHC and RHB filed a suggestion of bankruptcy on behalf of the "Hassell 2012 Joint Venture and Springwoods Joint Venture," seeking to stay HCCI's lawsuit in the trial court. In the following months, the District, Springwoods, and WPM filed motions for summary judgment against HCCI, and a hearing was set for May 29, 2015.[7] On May 27, 2015, the United States Bankruptcy Court for the Southern District of Texas sent a "Request for Abatement" to the trial court requesting abatement of the underlying proceedings. On May 29, 2015, the trial court abated the case.

In April 2016, the Bankruptcy Court granted RHC's motion to dismiss its bankruptcy petition. The trial court then reinstated the case and reset the hearing on the pending motions for summary judgment for October 7, 2016. A week prior to the hearing, RHC and RHB filed their Second Petition in Intervention, asserting they had a "right to intervene as principal on the contract at issue."[8] RHC and RHB asserted that they, and not HCCI, had received and reviewed the bid package

---

[7]   Costello joined in the motions for summary judgment against HCCI, but HCCI voluntarily nonsuited its claims against Costello prior to the trial court's final judgment. As such, the trial court did not rule on Costello's motion for summary judgment.

[8]   Although RHC, RHB, and Royce and Silvia Hassell filed the First Petition in Intervention, only RHC and RHB filed the Second Petition in Intervention.

8

information for the Project and had submitted the winning bid in the name of HCCI. RHC and RHB asserted that HCCI had "pretend[ed] it performed as contractor." According to RHC and RHB, after RHC and RHB[9] were awarded the Contract, HCCI confirmed to the District that RHC and RHB were "the Contractor[s] performing the Contract under the name of [HCCI]." Although the Contract had been awarded "in the name of HCCI," RHC and RHB claimed they mobilized their equipment and employees, communicated with Springwoods, the District, Costello, and WPM, and controlled all the work on the Project. After RHC and RHB encountered delays, they retained counsel, who filed suit "on behalf of and in consultation with HCCI." RHC and RHB alleged that they "filed the petition because [they were] the Contractor[s] on the Project and held a good-faith belief that [they were], at a minimum, a partner with HCCI in the [Project]; or alternatively, that HCCI served as RHC's [and RHB's] agent in bidding and securing the [Contract], as HCCI had done on other projects."

RHC and RHB argued that they had a justiciable interest in the suit because they could have brought the same action, or any part thereof, in their own names. They asserted that they had acted as principals, with HCCI as agent, in bidding and securing the Contract. RHC and RHB further argued that their intervention would

---

[9]     RHB and RHC were referred to collectively as RHC in the Second Petition for Intervention.

not complicate the case because they sought to recover their damages "from the same defendants that HCCI alleged [had] caused it harm." RHC and RHB argued that their intervention was essential to protect their interests because the defendants had argued in their summary judgment motions that they were entitled to judgment as a matter of law because HCCI could not establish it had suffered any damages and, instead, the damages had been suffered by RHC and RHB. RHC and RHB asserted that the defendants, through their summary judgment motions, sought a judgment that would prejudice their rights to recover.

Like HCCI, RHC and RHC asserted claims for breach of contract against the District and Springwoods in their Second Petition in Intervention, and alternative claims against the District under Texas Local Government Code section 271.153. Additionally, RHC and RHB asserted claims against the District and Springwoods for assumpsit, quantum meruit, and unjust enrichment. RHC and RHB also brought new claims against the District, Springwoods, WPM, and Costello for common law fraud, fraud by nondisclosure, fraudulent inducement, and conspiracy alleging they each knew that the construction plans RHC and RHB had relied upon to submit their bid for the Project were not intended to be the actual plans, and the District, Springwoods, WPM, and Costello had "secretly agreed with each other to delay payment [for change orders] to force RHC [and RHB] to bear the costs." RHC and RHB also brought a breach of warranty claim against the District, Springwoods,

10

WPM, and Costello, alleging they had "breached their warranty that the plans provided to bidders were suitable to bid and build the Project."

HCCI nonsuited its claims against Springwoods and the District. Springwoods, the District, WPM, and Costello then moved to strike RHC's and RHB's Second Petition in Intervention as untimely, moot, and barred by judicial admissions. They noted that RHC and RHB had waited over four years after the inception of the lawsuit to file their Second Petition in Intervention, just one week before the scheduled hearing on the pending summary judgment motions. Springwoods, the District, WPM, and Costello further asserted that RHC's and RHB's allegation of a principal-agent relationship with HCCI was contradicted by RHC's and RHB's allegations in their First Petition in Intervention that RHC, RHB, and HCCI had performed the Project as part of a "joint venture" and were "partners" on the Project.[10] They asserted that an intervention by RHC and RHB would excessively multiply the issues by requiring litigation of various new issues, and that "[h]ad RHC [and RHB] been allowed to intervene, [they] would have become a new and the only plaintiff[s]" and "would have created an entirely new lawsuit."

After a hearing, the trial court granted the motion to strike RHC's and RHB's Second Petition in Intervention. Springwoods, the District, and WPM filed a joint

---

[10] Royce Hassell, Silvia Hassell, and R. Hassell Holding Company, Inc. were also intervenors with respect to the First Petition in Intervention.

11

motion and notice of nonsuit, nonsuiting all pending claims against one another without prejudice.[11]  The trial court signed a final judgment dismissing all claims and parties consistent with the parties' nonsuit notices.

RHC and RHB filed a notice of appeal challenging the trial court's order striking their Second Petition in Intervention.  *See R. Hassell & Co., Inc. v. Springwoods Realty Co.*, No. 01-17-00154-CV, 2018 WL 1864627 (Tex. App.—Houston [1st Dist.] Apr. 19, 2018, pet. denied) (mem. op.).  On appeal, RHC and RHB argued the trial court erred in granting the motion to strike their Second Petition in Intervention because RHC and RHB established they had a justiciable interest in the suit. They argued the striking of their petition prejudiced RHC and RHB as a matter of law because they were deprived of the benefit of the relation-back doctrine to respond to limitation challenges and the "thousands of pages of discovery accumulated between 2012 and 2016.  *Id.* at *5.

On April 19, 2018, this Court held the trial court had not abused its discretion by granting the motion to strike RHC's and RHB's Second Petition in Intervention because RHC and RHB had not shown that the trial court acted without reference to any guiding rules or principles based on evidence of delay and multiplicity of claims. *Id.* at *8.  This Court did not reach the question of "whether RHC [and RHB] could

---

[11]     Costello was not a party to the motion because it had not asserted any claims in the First Lawsuit.

have brought the same action, or any part thereof, in [their] own name or whether the intervention [was] essential to effectively protect RHC's [and RHB's] interest." *Id.* at \*7. RHC and RHB subsequently filed a petition for review, which the Texas Supreme Court denied on April 23, 2021.

In December 2016—a little more than a week after the trial court struck RHC's Second Petition in Intervention—two new lawsuits were filed involving the same parties and mostly the same set of facts at issue in the First Lawsuit. HCCI filed suit against Springwoods and the District ("Second Lawsuit"), and Appellants separately filed the lawsuit giving rise to the present appeal against Springwoods, the District, Costello, and WPM ("Third Lawsuit").

**B.     Second Lawsuit (Trial Court Case Number 2016-84811-7)**

On December 9, 2016, HCCI refiled the First Lawsuit as a new lawsuit in the 333rd Judicial District Court, Harris County, Texas. The case was styled Cause No. 2016-84811, *Hassell Construction Co., Inc. v. Springwoods Realty, Inc. and Harris County Improvement District #18*. As in the First Lawsuit, HCCI asserted claims against Springwood and the District for breach of contract and against Springwoods for fraud. In the alternative, HCCI asserted claims against the District under Texas Local Government Code section 271.153(a)(2), and against Springwoods for assumpsit, quantum meruit, and unjust enrichment. Springwoods counterclaimed against HCCI for "misrepresentation and omission liability" and breach of contract.

13

Springwoods filed a third-party petition against Costello and WPM for negligence and contribution and the District filed a third-party petition against Costello and WPM for indemnity, breach of contract, breach of express or implied warranty, negligence, and contribution.

Springwoods and the District moved for summary judgment on HCCI's claims based on the statute of limitations. On September 5, 2017, the trial court granted both motions, in part, and dismissed HCCI's claims with prejudice, except for HCCI's claim stemming from an invoice dated December 28, 2012. Springwoods and the District nonsuited their claims against Costello and WPM on December 27, 2017 and January 9, 2018, respectively.

On June 24, 2018, Springwoods, the District, and HCCI executed a Release and Settlement Agreement ("Settlement Agreement") resolving their claims with respect to the Contract and the Project. Pursuant to the Settlement Agreement, Springwoods, the District, and HCCI filed a Joint Motion to Dismiss with Prejudice in the Second Lawsuit. The trial court signed an Order for Dismissal with Prejudice on July 10, 2018. As relevant here, the Settlement Agreement states, "This is intended to be a global release of HCCI's claims against the Owner/Developer Releasees [Springwoods and the District] with respect to the Contract and the Project, including all of HCCI's claims against the Owner/Developer Releasees [Springwoods and the District] that could be asserted by HCCI itself or that could

14

be asserted derivatively on its behalf." "HCCI is not acting for R. Hassell, as defined in paragraph 8(B), below, and this release does not release or affect any direct claims that R. Hassell may have against [Springwoods and the District], as opposed to derivative claims through HCCI, the existence of which direct claims is denied by Springwoods and the District."[12]

On May 13, 2022, Springwoods moved to dismiss parts of the present appeal as moot based on the Settlement Agreement.[13]

## C.    Third Lawsuit (Trial Court Case Number 2016-85276)

On December 12, 2016, Appellants RHC, RHB, and HCCI, derivatively by and through its shareholder Royce Hassell ("Hassell"),[14] filed suit against Springwoods, the District, Costello, and WPM seeking to recover damages for increased costs they allegedly incurred in performing the Contract. This Third Lawsuit is the subject of the present appeal.

Appellants Hassell, RHB, and RHC asserted claims against all defendants for breach of contract, common law fraud, fraud by nondisclosure, fraudulent inducement, conspiracy, assumpsit, quantum meruit, unjust enrichment, and

---

[12]    The Settlement Agreement defines "R. Hassell" as "Royce Hassell, Sylvia Hassell, R. Hassell & Company, Inc., or R. Hassell Builders, Inc.[,] together with any and all affiliated persons or entities."

[13]    We address the motion to dismiss in further detail later in this opinion.

[14]    We refer to HCCI, the party in the Third Lawsuit and in this appeal, as "Hassell" because HCCI sued derivatively by and through its purported shareholder Royce Hassell. We refer to Royce Hassell by his full name.

attorney's fees. Appellants also asserted they are entitled to recover from the District for breach of contract under Texas Local Government Code section 271.153(a)(2). Appellees answered the Third Lawsuit advancing limitations as an affirmative defense.

Springwoods moved for summary judgment on Appellants' claims based on the statute of limitations. Springwoods also asserted it was entitled to summary judgment on Appellants' quantum meruit claim because there is a written Contract precluding the claim.

After Springwoods moved for summary judgment, Appellants moved to abate the Third Lawsuit pending resolution of RHC's and RHB's appeal to this Court of the trial court's order in the First Lawsuit striking their Second Petition in Intervention. Appellants argued that abatement was necessary because RHC's and RHB's appeal "involve[d] the same claims and parties, and was filed earlier in time, it occupie[d] the dominant position with respect to these claims," and alternatively, "an outcome favorable to Appellants in the [First Lawsuit] would render any action by th[e trial court in the Third Lawsuit] an advisory opinion."

The District then moved for summary judgment joining and incorporating "by reference, as though fully set forth herein, the Motion for Summary Judgment of

Springwoods Realty Company and Springwoods Realty, Inc.," asking the trial court to enter judgment in its favor "and against Plaintiffs on all causes of action."[15]

WPM also moved for summary judgment on Appellants' causes of action "based on the arguments presented in Springwoods' Motion and the additional factual and legal issues identified below." In addition, WPM asserted that Appellants' "contract claims must be dismissed because there is no contract between [Appellants] and WPM." Costello also filed a motion for summary judgment in which it stated that it "join[ed] and adopt[ed], by reference, as though fully set forth herein," WPM's motion for summary judgment.

On April 20, 2017, the trial court denied Appellants' motion to abate. Appellants subsequently nonsuited their claims against Costello without prejudice and the trial court granted Springwoods' and the District's motions for summary judgment on Appellants' claims based on limitations. As a result, only Appellants' claims against WPM and WPM's corresponding motion for summary judgment remained pending. On September 27, 2017, the trial court issued a final judgment granting WPM's motion for summary judgment thus disposing of the only remaining

---

[15] The District also filed a reply stating that it "hereby joins and adopts by reference, as though fully set forth herein, Springwoods' Reply to Plaintiffs' Opposition to Springwoods' [Defendants'] Motion for Summary Judgment."

17

claims in the lawsuit.[16]  The trial court's prior summary judgment orders merged into the September 27, 2017 judgment.  *See Bonsmara Nat. Beef Co., L.L.C. v. Hart of Tex. Cattle Feeders, L.L.C.*, 603 S.W.3d 385, 390 (Tex. 2020) ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment. . .").

Appellants filed a notice of appeal on October 27, 2017, challenging the trial court's final judgment and the trial court's denial of Appellants' motion to abate. The appeal was set for submission on May 17, 2018.

On July 3, 2018, Appellants filed a Suggestion of Bankruptcy advising this Court that RHC had filed a bankruptcy petition in the Southern District of Texas and an automatic stay precluded the prosecution of the appeal.  *See* 11 U.S.C. Section 362(a).  This Court abated the appeal on July 10, 2018.  On November 24, 2020, this Court granted Springwoods' motion to reinstate the appeal and advised the parties:

> The appellate record and the parties' brief were filed prior to the abatement.  The parties are instructed to inform the Court by December 21, 2020 if they intend to rely upon their prior briefing or file a supplemental brief.

On March 1, 2021, Appellants filed a supplemental brief in which they raised issues and arguments not previously raised in their original briefing.  Appellants

---

[16]  The trial court's order granting summary judgment in favor of WPM on Appellants' breach of contract claims does not specify whether it granted summary judgment based on limitations or lack of privity.

argued for the first time in their supplemental brief that the trial court erred in granting summary judgment on their claims because (1) Appellants' causes of action never accrued under Texas Property Code § 53.053(b)(2), (2) Appellants' causes of action are governed by the ten-year statutes of repose in Texas Civil Practice & Remedies Code §§ 16.008 and 16.009, and (3) the legal authority the trial court relied on with respect to the length of the statute of limitations for their civil conspiracy claim changed during the pendency of this appeal. Appellants did not assert error based on Texas Property Code § 53.053(b)(2) or Texas Civil Practice & Remedies Code §§ 16.008 and 16.009 in their opening brief or their reply brief, nor did they challenge the trial court's granting of summary judgment on their civil conspiracy claim in their opening brief. Thus, these issues are waived. *See Los Compadres Pescadores, L.L.C. v. Valdez*, 608 S.W.3d 829, 838 n.10 (Tex. App.—Corpus Christi–Edinburg 2019), *aff'd*, 622 S.W.3d 771 (Tex. 2021) ("We need not address a new issue not raised by the appellant in the original brief.") (citing *Donaldson v. Tex. Dep't of Criminal Justice-Corr. Insts. Div.*, 355 S.W.3d 722, 727 (Tex. App.—Tyler 2011, pet. denied)); *see also Champion v. State*, 126 S.W.3d 686, 691–92 (Tex. App.—Amarillo 2004, no pet.) (declining to consider new issues raised in supplemental brief).

Appellants also raised two arguments in their supplemental brief challenging the appropriateness of the nonsuits filed in the First Lawsuit. They argue that

19

HCCI's nonsuit of its claims against Springwoods and the District in the First Lawsuit violated Texas Rule of Civil Procedure 162 and was ineffective because it failed to name the real party in interest. RHC's and RHB's appeal from the final judgment in the First Lawsuit, however, has been finally adjudicated in a separate appeal filed in this Court.[17] This Court held that the trial court did not abuse its discretion by granting the motion to strike the Second Petition in Intervention filed by RHB and RHC in the First Lawsuit, and the Texas Supreme Court denied RHC's and RHB's petition for review on April 23, 2021. *See R. Hassell & Co.*, 2018 WL 1864627, at *8. Thus, Appellants' issues regarding the nonsuits filed in the First Lawsuit are not properly before this Court and we decline to revisit those issues, which Appellants raised for the first time in their supplemental brief. *See Los Compadres Pescadores, L.L.C.*, 608 S.W.3d at 838 n.10; *see also Champion*, 126 S.W.3d at 691–92.

**D.    Contract Terms**

The Contract includes the contract documents attached to the Contract, including the Standard General Conditions of the Construction Contract ("General Conditions"). Article 6 of the Contract and Article 14 of the General Conditions, which are attached to the Contract and incorporated by reference, set forth the

---

[17]    *See R. Hassell & Co., Inc. v. Springwoods Realty Co.*, No. 01-17-00154-CV, 2018 WL 1864627 (Tex. App.—Houston [1st Dist.] Apr. 19, 2018, pet. denied) (mem. op.).

20

parties' agreed upon payment procedures. Paragraph 14.01.A of the General Conditions requires HCCI to prepare and maintain a schedule "allocating portions of the Contract Price to various portions of the Work." The schedule will "serve as the basis for progress payments [made to HCCI]."

Under Paragraph 14.02 of the General Conditions, HCCI may submit payment applications to WPN and Costello, who will then review the applications and make a recommendation of payment to Springwoods. Specifically, Paragraph 14.02 states that "not more often than once a month[, HCCI] shall submit to [either WPM or Costello][18] for review an Application for Payment filled out and signed by [HCCI] covering the Work completed as of the date of the Application and accompanied by such supporting documentation as is required by the Contract Documents. Generally, payment of any recommended amount is due to HCCI ten days after Costello or WPM issue its payment recommendation to Springwoods. Paragraph 8.04 states that Springwoods "shall make payments to [HCCI] when they are due as provided in Paragraphs 14.02.C." Article 6 of the Contract, which contains similar provisions, also states that Springwoods "shall make progress payments on account of the Contract Price on the Basis of [HCCI's] Applications for Payment during the performance of the Work."

---

[18] Under the Contract, Costello was tasked with approving or denying any applications for payment associated with the water and sanitary sewer system, and WPM was responsible for approving or denying all other applications for payment.

21

The Contract also includes a mechanism through which either party may request an adjustment to the Contract Price. If the parties are unable to agree on the proper disposition of the request, "a Claim may be made thereof as provided in Paragraph 10.05." Paragraph 10.05(a) requires the parties to submit "all Claims" to WPM or Costello and states that "[a] decision [by WPM or Costello] shall be required as a condition precedent to any exercise by [Springwoods or HCCI] of any rights or remedies either may otherwise have under the Contract or the Laws and Regulations in respect of such Claims." A "claim" is defined as a "demand or assertion by Owner or Contractor seeking an adjustment of Contract Price . . . or other relief with respect to the terms of the Contract." Any Claim must be delivered to WPM or Costello no later than 30 days after the start of the event precipitating the Claim.

The Contract also states that WPM's or Costello's decision becomes final and binding unless a party invokes the Contract's dispute resolution procedure set forth in Article 16. Paragraph 16.01 states that either party "may request mediation of any Claim submitted [to Costello or WPM] for a decision under Paragraph 10.05 before such decision becomes final and binding." Paragraph 16.01.A–B states the "process shall be concluded within 60 days of the request. The date of termination of the mediation shall be determined by application of the" Construction Industry Mediation Rules of the American Arbitration Association. Paragraph 16.01.C

22

further states that if a Claim is not resolved by mediation, WPM's or Costello's decision becomes final and binding within 30 days after "termination of mediation," unless (1) a party "elects in writing to invoke any dispute resolution process provided for the Supplementary Conditions," (2) the parties agree to submit their claims to another dispute resolution process, or (3) one of the parties gives written notice to the other party of its intent to submit the Claim to a court of competent jurisdiction. Paragraph 16.18 states that HCCI "shall carry on the Work and adhere to the Progress Schedule during all disputes or disagreements with [Springwoods]. No work shall be delayed or postponed pending resolution of any disputes or disagreements."

Paragraph 17.03 further provides, "The duties and obligations imposed by these General Conditions and the rights and remedies available hereunder to the parties hereto are in addition to, and are not to be construed in any way as a limitation of, any right and remedies available to any or all of them which are otherwise imposed or available by Laws or Regulations . . . ."

**Motion to Dismiss**

On May 13, 2022, Springwoods filed a partial motion to dismiss Hassell's present appeal for want of jurisdiction. The District joined the motion and adopted

23

Springwoods' arguments by reference.[19]  Springwoods and the District argue that

Hassell's claims, which are claims Royce Hassell seeks to assert derivatively on

behalf of HCCI, are moot because HCCI, Springwoods, and the District executed a

Settlement Agreement on June 24, 2018, settling all claims among HCCI,

Springwoods, and the District associated with the Contract and the Project.  They

explain that HCCI, Springwoods, and the District moved to dismiss their claims with

prejudice in the Second Lawsuit, and the trial court granted the motion and signed

an Order for Dismissal with Prejudice on July 10, 2018.

Springwoods and the District also argue that Appellants' challenge of the trial

court's refusal to abate the Third Lawsuit pending disposition of RHC's and RHB's

appeal from the First Lawsuit is moot because RHC's and RHB's appeal from the

First Lawsuit has been finally resolved.[20]  On May 24, 2022, Appellants filed a

motion for extension of time to respond to the motion to dismiss.

After hearing oral argument in this appeal on May 25, 2022, this Court

requested supplemental briefing from the parties addressing Springwoods' and the

District's motion to dismiss and corresponding jurisdictional arguments.   We

---

[19]     Although Costello also joined the motion, Costello was nonsuited before the final judgment was issued and thus, Costello is not a party to this appeal.

[20]     Springwoods and the District also argued that "Appellants' Points of Error in Their Supplemental Brief [filed on March 1, 2021], Which Address Alleged Errors in the First Lawsuit, Are Improper and Rendered Moot by the Disposition of the First Appeal."  As previously discussed, the arguments raised in Appellant's March 1, 2021 supplemental brief are either waived or not pending before this Court.

24

directed the parties to address the impact, if any, the July 10, 2018 Order for Dismissal with Prejudice in the Second Lawsuit has on Appellants' issues in this appeal relative to Appellants' claims against Springwoods, the District, and WPM.

## A. Settlement Agreement[21]

On June 24, 2018, Springwoods, the District, and HCCI executed the Settlement Agreement that purportedly resolved the parties' claims with respect to the Project and the Contract. Relevant here, the Settlement Agreement states, "This is intended to be a global release of HCCI's claims against [Springwoods and the District] with respect to the Contract and the Project, including all of HCCI's claims against [Springwoods and the District] that could be asserted by HCCI itself or that could be asserted derivatively on its behalf." The Settlement Agreement further states, "HCCI is not acting for [Royce Hassell, Sylvia Hassell, R. Hassell & Company, Inc., RHC, or RHB] and this release does not release or affect any direct claims that [Royce Hassell, Sylvia Hassell, R. Hassell & Company, Inc., RHC, or RHB] may have against [Springwoods and the District], as opposed to derivative

---

[21] The complicated history of the parties' ongoing disputes presents unique and challenging procedural issues. Over the last 10 years, there have been multiple overlapping lawsuits presenting the same or similar issues arising from the Contract and the Project and several bankruptcy proceedings initiated while these lawsuits, and this appeal, have been pending. Of particular note, the Second Lawsuit was purportedly resolved well after the trial court granted summary judgment in the Third Lawsuit, the subject of this appeal. It is the resolution of the Second Lawsuit after this appeal was filed that forms the basis of much of Springwood's and the District's motion to dismiss and jurisdictional arguments.

claims through HCCI, the existence of which direct claims is denied by Springwoods and the District."

## B. Post Oral Argument Briefing

In their post oral argument briefing, Appellants argue that RHC and RHB were parties to the Second Lawsuit because they "timely intervened in [the Second Lawsuit] twice claiming that jurisdiction was improper," and there are fact issues over whether (1) the claims the Second Lawsuit are the same as the claims involved in this appeal, (2) Springwoods, the District, and WPM violated the automatic stay imposed by Appellants' bankruptcy proceedings by executing the Settlement Agreement and moving to dismiss the Second Lawsuit with prejudice, and (3) the "Order for Dismissal with Prejudice" is a valid and existing final judgment or that it disposed of issues in this case.[22] Appellants further contend that "[t]he lower courts' actions created an unusual procedural posture which, in equity and good conscience, cannot be undone by a jurisdictional plea in this appeal on limitations."

---

[22] Appellants argue that the "Order for Dismissal with Prejudice" is not a valid final judgment because RHC and RHB intervened in the Second Lawsuit and the order does not dispose of their affirmative claims for relief. Although Springwoods contends that the judgment in the Second Lawsuit is final because RHB and RHC "never properly intervened" in that suit, we need not decide whether RHB and RHC intervened in the Second Lawsuit or whether there is a final judgment in that case because, even assuming the judgment is final, the issues presented in this appeal are not moot for the reasons we discuss.

In its post oral argument briefing, Springwoods argues that the July 10, 2018 Order for Dismissal with Prejudice in the Second Lawsuit is a final adjudication of all of HCCI's claims with respect to the Project and Contract, and any further litigation over such claims by Hassell is barred by the doctrine of res judicata. The Settlement Agreement purports to release HCCI's claims against Springwoods and the District "with respect to the Contract and the Project, including all of HCCI's claims against [Springwoods and the District] that could be asserted by HCCI itself or that could be asserted derivatively on its behalf." In a footnote, Springwoods contends that the term "derivative" means "all claims asserted by Appellants that derive from Springwoods' contract" with HCCI and "[i]n addition to traditional shareholder derivative claims asserted by Royce Hassell or perhaps one or more of the other Appellants." Springwoods further contends that the Settlement Agreement released HCCI's claims against it, including any claims that could be asserted derivatively on HCCI's behalf, and therefore, HCCI's issues on appeal are moot. The District joined Springwoods' post oral argument briefing and adopted Springwoods' arguments by reference.

In its post oral argument brief, WPM adopts Springwoods' briefing and further asserts that RHC's and RHB's claims against it are barred by collateral estoppel because the trial court granted WPM's motion for summary judgment in the Second Lawsuit on the grounds that HCCI's claims were barred by the statute of

limitations and this finding is binding on Hassell and its privities, including RHC and RHB.  Alternatively, WPM argues that RHC's and RHB's claims against it are "mooted by the Settlement Agreement and the economic loss rule."  According to WPM, RHC and RHB are "not in privity of contract with WPM and without HCCI's claims against the District or Springwoods, [they] cannot recover in any capacity, nor can [RHC or RHB] hope to recover through HCCI as its subcontractor[s] on the Project."  WPM argues:

> HCCI has no viable claim against WPM because HCCI has released Springwoods and the District—the only parties HCCI had contractual privity with on this Project.  Because Appellants had no contractual privity with WPM—a finding below which Appellants have not challenged—they cannot recover against WPM in contract. Further, Appellants cannot recover in tort because of the economic loss rule.

In their reply brief, Appellants argue that Appellees "have not met their heightened burden to show that [the Order of Dismissal with Prejudice in the Second Lawsuit] would, in any case, moot any of the claims before this Panel."  According to Appellants, Appellees are relying on "unpleaded, undecided affirmative defenses disguised as jurisdictional pleas which were not presented to the Trial Court, which implicate multiple fact-issues, and which, resultingly, could not be covered by the summary judgment pleadings and the resulting Final Judgment."  Appellants further contend that Appellees' affirmative defenses—such as res judicata, collateral estoppel, lack of privity, limitations, or settlement—"are not jurisdictional pleas, but pleas that must be raised under the normal pleading protocols for summary judgment

28

motions." Appellants argue their due process rights would be violated if they were forced to "address affirmative defenses raised for the first time on appeal without an opportunity to address such affirmative defenses to the Trial Court and present evidence why there exist genuine issues of material fact," and, "[i]f necessary, Appellants should be allowed to re-plead and not be denied that right by the raising of an affirmative defense for the first time before this Panel such that responsive pleadings were not called for in the Trial Court and are, therefore, not part of the appellate record." According to Appellants, Appellees did not move for summary judgment on any of these newly asserted affirmative defenses, and, thus, it would be improper to affirm the granting of summary judgment on these grounds.[23]

---

[23] WPM moved for summary judgment on Appellants' breach of contract claim based on limitations and lack of privity. In its responsive brief, WPM argues that Appellants are not challenging on appeal WPM's argument that it was entitled to summary judgment because there was no privity of contract between Appellants and WPM and because the trial court did not specify the grounds upon which it was granting summary judgment, we must affirm the grant of summary judgment. *See Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022) ("When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based."); *see also Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed."). We address this issue later in the opinion. Appellants, who did not address this argument in their reply brief, argue for the first time in their post oral argument brief that WPM's motion for summary judgment was granted exclusively on the basis of limitations. Appellants further assert that WPM "did not plead affirmative defenses involving contractual privity in its answer. . ., and did not adequately raise, brief or present summary judgment evidence except on limitations." To the extent Appellants raise

Appellants also argue that Appellees' arguments are inconsistent with their arguments that the Order of Dismissal with Prejudice in the Second Lawsuit was a final judgment and thus Appellees are estopped from raising these affirmative defenses. Appellants contend they "sufficiently plead jurisdictional facts which for purposes of this inquiry must be accepted as true with every reasonable inference and any doubt being resolved in favor of Appellants." According to Appellants, the "pleadings of Appellants demonstrate continuing jurisdiction because the claims are based on a nucleus of facts which have not been resolved by a full trial on the merits, and in any event are not the same claims as have been plead" in the Second Lawsuit. Appellants further contend that they asserted in their pleadings that Royce Hassell "is a shareholder of HCCI; that Appellants performed the work on the Springwoods Project as Contractor; that RHC/RHB were in partnership with HCCI; that HCCI acted as agent for RHC/RHB; and that the contract of RHC/RHB has the aspects of a sham contract while the [Settlement Agreement], for its validity, appears to require

---

new arguments challenging the granting of summary judgment in favor of WPM for the first time in their post oral argument brief, which by order we limited to the jurisdictional questions, we decline to address these new arguments. *See Los Compadres Pescadores, L.L.C. v. Valdez*, 608 S.W.3d 829, 838 n.10 (Tex. App.—Corpus Christi–Edinburg 2019), *aff'd*, 622 S.W.3d 771 (Tex. 2021) ("We need not address a new issue not raised by the appellant in the original brief."); *see also Champion v. State*, 126 S.W.3d 686, 691–92 (Tex. App.—Amarillo 2004, no pet.) (declining to consider new issues raised in supplemental brief).

opposite representations and warranties which in no way moot issues in this case."[24]

Appellants contend that these disputed issues of fact "could be decided in favor of Appellants thereby making Appellants' claims live and not moot."

## C.    Applicable Law

This Court has no jurisdiction over a case that has become moot. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012); *see also Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021) (stating mootness doctrine prevents courts from rendering advisory opinions, which are outside jurisdiction conferred by Texas Constitution article II, section 1). "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Heckman*, 369 S.W.3d at 162. In other words, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.* "If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction." *Id.* A case, however, "is not rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d

---

[24]    For example, the Settlement Agreement states that Royce Hassell is not a shareholder in HCCI.

31

732, 737 (Tex. 2005) (orig. proceeding). If only some claims or issues become moot, the case remains "live," at least as to other claims or issues that are not moot. *See id.*

## D. Release, Collateral Estoppel, and Res Judicata

Springwoods, the District, and WPM's arguments based on release, collateral estoppel, and res judicata stemming from the Settlement Agreement do not render the present appeal moot. Release, collateral estoppel, and res judicata are affirmative defenses and the party asserting them has the burden of pleading and proving these defenses. TEX. R. CIV. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively estoppel, . . . release, res judicata, . . . and any other matter constituting an avoidance or affirmative defense."). To establish the affirmative defense of release, the party asserting it must "prove the existence of an effective and valid release." *Raider Ranch, LP v. Lugano, Ltd.*, 579 S.W.3d 131, 134 (Tex. App.—Amarillo 2019, no pet.); *Barras v. Barras*, 396 S.W.3d 154, 170 n.5 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990)). The elements of res judicata, or claim preclusion, are: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Eagle*

32

*Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705–06 (Tex. 2021) (quoting

*Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)).

Collateral estoppel, or issue preclusion, bars the relitigation of identical issues

of fact or law decided in a prior suit. *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d

575, 579 (Tex. 2001). A party seeking to assert the bar of collateral estoppel must

establish that (1) the issue of fact or law sought to be litigated in the second action

was fully and fairly litigated in the first action, (2) those issues were essential to the

judgment in the first action, and (3) the party against whom the doctrine is asserted

was a party or was in privity with a party in the first action. *Sysco Food Servs., Inc.*

*v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

As affirmative defenses, collateral estoppel, res judicata, and release are pleas

in bar, not jurisdictional pleas. *See Texas Highway Dep't v. Jarrell*, 418 S.W.2d

486, 488 (Tex. 1967) (stating res judicata is plea in bar); *FLCT, Ltd. v. City of Frisco*,

493 S.W.3d 238, 260 (Tex. App.—Fort Worth 2016, pet. denied) ("As an affirmative

defense, collateral estoppel is a plea in bar, not a jurisdictional plea."). While theses

defenses may prevent a plaintiff from recovering on a cause of action, they do not

effect whether a court has subject matter jurisdiction. *See Jarrell*, 418 S.W.2d at

488 (stating "a plea to the jurisdiction, if sustained, would require a dismissal; . . .

and a plea in bar, if sustained, would require a judgment that the claimant take

nothing") (citation omitted); *see also FLCT, Ltd.*, 493 S.W.3d at 260 (stating that

33

because collateral estoppel is plea in bar, it "would not support the trial court's dismissal for want of jurisdiction") (internal citations omitted); *Whallon v. City of Houston*, 462 S.W.3d 146, 155 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (rejecting argument trial court was deprived of jurisdiction based on res judicata and noting "argument conflates the separate and distinct concepts of res judicata and subject-matter jurisdiction"). Thus, even assuming any of these affirmative defenses apply, they would not deprive this Court of jurisdiction over the present appeal.

WPM's jurisdictional arguments with respect to RHC and RHB regarding lack of privity and the economic loss rule are also unpersuasive. According to WPM, RHC's and RHB's claims against it are moot and we are thus deprived of jurisdiction because WPM moved for summary judgment based on limitations and lack of privity, and because RHC and RHB do not challenge the granting of summary judgment based on lack of privity, "they cannot recover against WPM in contract." Lack of privity, however, is a contractual defense, not a jurisdictional issue. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (recognizing lack of privity as contractual defense).

WPM further contends we lack jurisdiction because RHC and RHB "cannot recover in tort because of the economic loss rule." "[A] duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012) (per

34

curiam); *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (discussing economic-loss rule and stating "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit").  The economic loss rule, however, "is a consideration in measuring damages," not a jurisdictional bar.  *See Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007).

We thus hold that Appellants' challenges to the trial court's granting of summary judgment in favor of Appellees on Appellants' claims against Springwoods, the District, and WPM are not moot and do not deprive this Court of jurisdiction to consider Appellants' appeal.

To the extent Springwoods, the District, and WPM attempt to raise their affirmative defenses of collateral estoppel, res judicata, and release in their motion to dismiss or post oral argument briefs, these affirmative defenses are waived for purposes of this appeal.  *See* TEX. R. CIV. P. 94; *In re S.A.P.*, 156 S.W.3d 574, 576 (Tex. 2005); *see also Izen v. Laine*, 614 S.W.3d 775, 796 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).  The District, Springwoods, and WPM did not plead those affirmative defenses in their pleadings nor did they present those affirmative

35

defenses in their motions for summary judgment filed in the trial court.[25] We thus cannot consider the propriety of the trial court's summary judgment ruling on Appellants' claims based on such grounds. As the Texas Supreme Court explained in *State Farm Fire & Casualty Company v. S.S.*, 858 S.W.2d 374 (Tex. 1993):

> Affirming a summary judgment on an independent ground not specifically considered by the trial court usurps the trial court's authority to consider and rule on issues before it and denies the appellate court of the benefit of the trial court's decision on the issue. Such a practice results in appellate courts rendering decisions on issues not considered by the trial court and voiding the trial court's decision without allowing it to first consider the alternate grounds. Usurping the trial court's authority does not promote judicial economy, but instead serves as an encouragement for summary judgment movants to obtain a specific ruling from a trial judge on a single issue and then try again with other alternate theories at the court of appeals, then assert the same or additional alternate theories before this Court. Our system of appellate review, as well as judicial economy, is better served when appellate courts only consider those summary judgment issues contemplated and ruled on by the trial court.

*Id.* at 381–82.

## E.    Denial of Motion to Abate

In their second issue, Appellants argue the trial court abused its discretion by denying their motion to abate the Third Lawsuit pending resolution of their appeal of the trial court's judgment in the First Lawsuit. Appellants contend the trial court's refusal to abate "exposed them to the dangers of inconsistent judgments being

---

[25]    As noted in the background section, the parties did not execute the Settlement Agreement and the trial court did not issue its order of dismissal in the Second Lawsuit until *after* the trial court granted summary judgment in favor of Appellees in the Third Lawsuit *and* Appellants filed their notice of appeal in this case.

rendered on the same set of facts." In their motion to dismiss, Springwoods and the District argue that Appellants' challenge to the trial court's refusal to abate the Third Lawsuit is moot because Appellants' appeal from the First Lawsuit has been finally resolved. We agree.

On February 5, 2018, Appellants filed their opening brief in this appeal. On April 19, 2018, this Court affirmed the trial court's striking of RHC's and RHB's Second Petition in Intervention in the First Lawsuit and the Texas Supreme Court denied RHC's and RHB's petition for review in that case. *See R. Hassell & Co., Inc.*, 2018 WL 1864627, at *8. This Court issued the mandate on May 7, 2018, thus finally disposing of RHC's and RHB's appeal of the First Lawsuit. Because RHC's and RHB's appeal from the First Lawsuit is final, any decision this Court would render on the merits of this issue "cannot affect the parties' rights or interests." *Heckman*, 369 S.W.3d at 162. Thus, Appellants' second issue challenging the denial of their motion to abate is moot.

## F.    Conclusion

We deny Appellants' partial motion to dismiss. Even though Appellants' challenge to the denial of their motion to abate is moot, the case remains "live" as to Appellants' other challenges to the trial court's order granting summary judgment in favor of Appellees. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737 (stating if only some claims or issues become moot, case remains "live" with respect

to other claims or issues that are not moot). Therefore, we will address the merits of Appellants' remaining challenges to the trial court's granting of summary judgment on Appellants' breach of contract, fraud, fraudulent inducement, fraud by non-disclosure, conspiracy to defraud, assumpsit, quantum meruit, and unjust-enrichment claims.

## Summary Judgment

Appellants argue the trial court abused its discretion by granting summary judgment in favor of Appellees in the Third Lawsuit because (1) limitations had not expired on each of Appellants' claims before they filed suit; (2) limitations was tolled on all of Appellants' claims; and (3) Appellees did not conclusively establish the accrual dates for each of Appellants' claims or, alternatively, Appellants raised a question of material fact over the accrual date for each claim.

### A. Standard of Review

We review a summary judgment ruling based on the affirmative defense of limitations de novo. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018). When reviewing a summary judgment ruling, we take as true all evidence favorable to the nonmovant. *See id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See id.* On appeal, the movant still bears the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *M.D. Anderson*

*Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The evidence raises a genuine issue of material fact if reasonable and fair minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). If the trial court does not specify the grounds on which it granted a summary judgment, the appellant must defeat all grounds presented in the summary judgment motion. *See Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022) ("When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based.").

A party moving for summary judgment based on limitations must conclusively establish the bar of limitations. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 833 (citing *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). To meet its burden, the movant must prove the accrual date for each challenged cause of action conclusively and negate any tolling doctrines the nonmovant has pleaded or otherwise raised. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 834 (citing *KPMG Peat Marwick*, 988 S.W.2d at 748). An issue is conclusively proven if reasonable minds would necessarily agree regarding the conclusion to be reached from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people

39

could not differ in their conclusions. . .").  If the movant establishes that limitations bars a challenged cause of action, the nonmovant must then present evidence raising a fact issue to avoid the statute of limitations.  *KPMG Peat Marwick*, 988 S.W.2d at 748.

A party who seeks summary judgment based on limitations need not negate a tolling doctrine that has not been pled.  *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).  When a party asserts a tolling doctrine for the first time in response to a summary judgment motion, the movant may either object that the tolling doctrine has not been pleaded or respond on the merits and try the issue by consent.  *Id.*  If the movant does not object and elects to respond on the merits, the tolling doctrine's applicability is placed squarely before the trial and appellate courts.  *Id*.

**B.    WPM's Motion for Summary Judgment**

WPM moved for summary judgment on all of Appellants' causes of action asserted against it.  WPM stated that it was moving for summary judgment "based on the arguments presented in Springwoods' Motion and the additional factual and legal issues identified below."   WPM also attached Springwoods' motion and exhibits to its motion and "incorporate[d] the [Springwoods'] Motion and exhibits as if expressly stated herein."  Specifically, WPM argued that Appellants' claims for breach of contract, fraud, conspiracy, assumpsit, quantum meruit, and unjust enrichment were barred by the applicable statutes of limitations "for the same

40

reasons identified in Springwoods' Motion for Summary Judgment." WPM also argued in the alternative that it was entitled to summary judgment on Appellants' breach of contract claims because Appellants did not enter into any contractual agreement with WPM and thus, Appellants cannot establish the elements of its breach of contract actions. The trial court granted WPM's motion in its final judgment without specifying the basis for its ruling.

Appellants argue the trial court abused its discretion by granting WPM's motion for summary judgment with respect to all claims pending against WPM because WPM's motion incorporated another party's motion by reference and did not expressly set out any grounds in support of WPM's Rule 166(c) motion.[26] Appellants' argument is not persuasive. First, Appellants did not challenge the appropriateness of summary judgment in favor of WPM on this basis in the trial court and therefore the issue is waived. *See Mallory v. Arctic Pipe Inspection Co., Inc.*, No. 01-12-00979-CV, 2014 WL 701123, at *6 (Tex. App.—Houston [1st Dist.] Feb. 20, 2014, pet. denied) (mem. op.) (holding nonmovant waived right to challenge appropriateness of summary judgment that adopted codefendant's motion by not specially excepting to motion and obtaining ruling on special exception). Second, even if Appellants had challenged WPM's motion for summary judgment on this

---

[26] Although the District's motion for summary judgment also joined and adopted Springwoods' motion for summary judgment, Appellants do not challenge the summary judgment granted in favor of the District on this basis.

41

ground, Texas courts, including this Court, "have recognized [the] adoption of co-party's motion for summary judgment as a procedurally legitimate practice." *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 72–73 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also* TEX. R. CIV. P. 58 ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. . ."). A defendant can adopt by reference the summary judgment grounds, argument, and evidence of a codefendant when both defendants have a community of interest and identical defenses. *See id.* (permitting adoption by reference of codefendant's summary-judgment grounds); *see also Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 699–700 (Tex. App.—Corpus Christi 2001), *rev'd on other grounds*, 118 S.W.3d 742 (Tex. 2003). Here, Springwoods and WPM asserted limitations as an affirmative defense to all of Appellants' claims and Springwoods moved for summary judgment on this defense. *See generally McDaniels v. Mittemeyer*, No. 07-03-0234-CV, 2004 WL 578581, at *1 (Tex. App.—Amarillo Mar. 24, 2004, pet. denied) (mem. op.) (affirming grant of summary judgment on statute-of-limitations grounds in favor of defendant who adopted and incorporated by reference codefendant's motion for summary judgment on statute of limitations grounds). We thus reject Appellants' argument that the trial court abused its discretion by granting WPM's motion because it adopted and incorporated Springwoods' motion for summary judgment.

## C. Appellants' Breach-of-Contract Claims

### 1. WPM

In addition to its statute of limitations defense, WPM also argued it was entitled to summary judgment on Appellants' breach of contract claim because Appellants did not have a contractual agreement with WPM and thus, they could not establish privity of contract. Because the trial court did not specify the grounds on which it granted WPM's motion for summary judgment on Appellants' breach of contract claim, Appellants must defeat all grounds presented in WPM's motion, including WPM's lack of privity argument. *See Rosetta Res. Operating, LP*, 645 S.W.3d at 226.

On appeal, Appellants only challenge WPM's argument that it was entitled to summary judgment on Appellants' breach of contract claim based on limitations; they do not challenge WPM's alternate argument that it was entitled to summary judgment based on lack of privity between Appellants and WPM. Because Appellants do not challenge this alternate ground on which the trial court could have based its summary judgment ruling in favor of WPM, we must affirm the judgment with regard to Appellants' breach of contract claim against WPM.[27] *See id.*

---

[27] The summary judgment may have been rendered, properly or improperly, on this unchallenged ground. *See Ellis*, 68 S.W.3d at 898 ("If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed."). Thus, we need not address the limitations argument with respect to WPM.

We overrule Appellants' first issue with respect to their breach of contract claims against WPM.

### 2.    Springwoods and the District

To establish their entitlement to summary judgment on Appellants' breach of contract claims based on limitations, Springwoods and the District were required to prove the accrual date for the claims conclusively and negate any applicable tolling doctrines plead by Appellants. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 834 (citing *KPMG Peat Marwick*, 988 S.W.2d at 748). "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Knott*, 128 S.W.3d at 221. A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.*; *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) ("Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy.").

A breach of contract claim accrues when the contract is breached. *Via Net*, 211 S.W.3d at 314. Texas common law, however, recognizes an exception to this rule in situations involving a continuing contract. A continuing contract is one under which "the contemplated performance and payment is divided into several parts or, where the work is continuous and indivisible, the payment for work is made in

installments as the work is completed." *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 381–82 (Tex. App.—Fort Worth 1994, writ denied) (citing *Godde v. Wood*, 509 S.W.2d 435, 441 (Tex. Civ. App.—Corpus Christ 1974, writ ref'd n.r.e.)); *City & Cty. of Dall. Levee Improvement Dist. v. Halsey, Stuart & Co., Inc.*, 202 S.W.2d 957, 961 (Tex. Civ. App.—Amarillo 1947, no writ)). For purposes of a continuing contract, the accrual date for a breach of contract cause of action is the earlier of (1) the completion of the work; (2) the termination of the contract under its own terms; or (3) the anticipatory repudiation of the contract by one party and the adoption of the repudiation by the other party. *Hubble*, 883 S.W.2d at 382; *see Godde*, 509 S.W.2d at 441.

Appellants argue that the Contract is a continuing Contract and thus, their breach of contract claims did not accrue until the earlier of (1) when the work was completed; (2) when the Contract was terminated in accordance with its terms; or (3) when the Contract is anticipatorily repudiated by one party and the repudiation is adopted by the other party. They claim that because no party contends Appellants completed the Contract, Springwoods and the District were required to demonstrate repudiation or that the Contract ended in accordance with its terms. Springwoods and the District argue that, even if the Contract were a continuing contract, the continuing contract rule does not determine the accrual date for Appellants' breach of contract claim because the Contract modifies the common law rules regarding the

45

accrual date for a breach of contract claim. Springwoods and the District argue that, because mediation of a disputed claim under the Contract is a condition precedent to filing suit, the parties intended that a cause of action for breach would accrue upon satisfaction of that condition precedent. They further contend that Appellants' causes of action for breach of contract accrued when the parties unsuccessfully mediated their payment claims on July 2, 2012. Thus, they argue, Appellants' breach of contract claims, which they filed in this case on December 12, 2016, are barred.

"Texas has a strong public policy favoring freedom of contract." *James Constr. Group, LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 403 (Tex. 2022); *see also Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016) ("Texas's strong public policy favoring freedom of contract is firmly embedded in our jurisprudence."). Thus, "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004). Absent compelling reasons, we must respect and enforce the terms of a contract that the parties have freely and voluntarily entered. *Philadelphia Indem. Ins. Co.*, 490 S.W.3d at 471; *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) ("Freedom of contract allows parties to bargain for mutually agreeable terms and allocate risks as they see fit.").

The Contract provides a comprehensive mechanism for the parties to resolve their payment disputes. Paragraph 14.02 states that HCCI may submit monthly applications for payment to WPM or Costello, who will review the applications and make a recommendation of payment to Springwoods. Payment of any recommended amounts are due to HCCI ten days after WPM or Costello tenders its payment recommendation to Springwoods. The Contract also includes a mechanism through which either party may request an adjustment to the Contract price. If the parties are unable to agree on the proper disposition of a payment request, a party may submit the claim to WPM or Costello, and their determination of the claim "shall be required as a condition precedent to any exercise by Owner or Contractor of any rights or remedies either may otherwise have under the Contract or the Laws and Regulations in respect of such Claims." WPM's or Costello's decision becomes final and binding within thirty days unless a party invokes the Contract's dispute resolution procedure set forth in Article 16.

Paragraph 16.01 states that either party may request to mediate a claim before WPM's or Costello's decision becomes final and binding. The mediation process must be "concluded within 60 days of the request." Paragraph 16.01.C further states that if a claim is not resolved by mediation, WPM's or Costello's decision becomes final and binding within thirty days after the mediation terminates, unless (1) a party "elects in writing to invoke any dispute resolution process provided for the

47

Supplementary Conditions," (2) the parties agree to submit their claims to another dispute resolution process, or (3) one of the parties gives written notice to the other party of its intent to submit the Claim to a court of competent jurisdiction. Thus, to summarize, if the parties have a payment dispute, the Contract first requires the parties to submit their payment claims to the engineer for determination as a condition precedent to filing suit. If the parties disagree with the engineer's decision, they may request mediation within thirty days of the decision or else the engineer's decision become final and binding. If the payment claim is not resolved by mediation, the engineer's decision with respect to that claim becomes final and binding within thirty days after the mediation terminates, unless the party advancing the payment claim takes one of three steps, one of which is to give written notice of its intent to submit the payment claim to a court of competent jurisdiction.

Following the parties' unsuccessful mediation on July 2, 2012, HCCI chose to submit its payment claims to a court of competent jurisdiction by filing suit. On July 26, 2012, it filed the First Lawsuit advancing the same breach of contract claims against Springwoods and the District that HCCI, derivatively and through Royce Hassell, now asserts in the present appeal.[28] Appellants, who do not dispute that HCCI filed the *same* breach of contract claims in July 26, 2012 against Springwoods

---

[28] Indeed, Appellants' note in their opening brief that they "timely provided that notice by filing suit on July 26, 2012."

48

and the District based on the *same* payment claims they now present here,[29] assert that their claims did not accrue in July 2012, and further argue that because the Contract does not use the terms "accrual," "causes of action," or limitations, the Contract did not intend to alter any common law rules regarding accrual. Appellants' arguments lack merit.

While the Contract does not use the terms "accrual," "causes of action," or "limitations," as Appellants argue, the Contract dictates when a breach of contract accrues because it informs the parties when a payment claim becomes ripe for dispute resolution, when a decision on the claim becomes final, and when the disputing party has a right to sue on the claim for breach of contract. *See Knott*, 128 S.W.3d at 221 ("As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy.").

Appellants argue that the parties did not intend for the Contract to modify or preempt the common law on limitations because Paragraph 17.03, "Cumulative

---

[29] In the First Lawsuit, HCCI asserted claims against Springwood and the District for breach of contract and against Springwoods for fraud. In the alternative, HCCI asserted claims against the District under Texas Local Government Code section 271.153(a)(2), and against Springwoods for assumpsit, quantum meruit, and unjust enrichment. In their Second Petition in Intervention, filed in the First Lawsuit, RHC and RHC asserted claims for breach of contract against the District and Springwoods, and alternative claims against the District under Texas Local Government Code section 271.153.

Remedies," states that the "duties and obligations imposed by these General Conditions and the rights and remedies available hereunder to the parties hereto are in addition to, and are not to be construed in any way as a limitation of, any right and remedies available to any or all of them which are otherwise imposed or available by Laws or Regulations . . . ." This argument is not persuasive. The Contract does not limit Appellants rights and remedies. Rather, the Contract dictates the time frame in which Appellants must file suit to preserve their rights and remedies on any payment claims because it authorizes the parties to submit any disputed claim to mediation within 30 days of the engineer's decision on payment, and to sue for breach of contract within 30 days after the mediation ends.

Based on the summary judgment record and the applicable standard of review, we hold that Springwoods and the District met their burden to establish conclusively that Appellants' breach of contract claims accrued at the latest on July 2, 2012, when mediation of the parties' payment claims terminated unsuccessfully, because at that time, the express terms of the Contract authorized Appellants to pursue their breach of contract claims in litigation, which they in fact did on July 26, 2012, when HCCI filed the First Lawsuit against Springwoods and the District asserting the *same* breach of contract claims Appellants now assert in the Third Lawsuit. We thus hold the trial court did not abuse its discretion by granting summary judgment in favor of Springwoods and the District on Appellants' breach of contact claims filed on

December 12, 2016. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 834 (citing *KPMG Peat Marwick*, 988 S.W.2d at 748).

### 3. Conclusion

We overrule Appellants' first issue with respect to their breach of contract claims against Springwoods, the District, and WPM.

## D. Appellants' Fraud, Fraud-by-Nondisclosure, Fraudulent-Inducement, and Conspiracy Claims

In their December 2016 petition filed in the Third Lawsuit, Appellants asserted separate claims for fraud, fraud by nondisclosure, fraudulent inducement, and conspiracy to commit fraud against Appellees. According to Appellees, Appellants' fraud and fraud by nondisclosure claims are barred by the four-year statute of limitations because Appellants knew by no later than the July 2, 2012 unsuccessful mediation that Appellants would not recover all of their alleged costs. Appellees also alleged that Appellants' conspiracy claim was time barred because their "cause of action for conspiracy accrued when [Appellants] claim they sustained an alleged injury as a result of Springwoods' alleged fraudulent act," and therefore, Appellants' "cause of action for conspiracy accrued no later than at the conclusion of the mediation on July 2, 2012." The trial court granted summary in Appellees' favor on these claims based on the statute of limitations.

Fraud has a four year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4); *Exxon Corp.*, 348 S.W.3d at 216; *Seureau v. ExxonMobil Corp.*, 274

51

S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The statute of limitations for civil conspiracy, which is a vicarious liability theory and not an independent cause of action, is governed by the underlying tort. *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 143–44 (Tex. 2019). Thus, the statute of limitations for Appellants' conspiracy claim is also four years.

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Knott*, 128 S.W.3d at 221. A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* Generally, a cause of action for fraud accrues "when the fraud is perpetrated, or if the fraud is concealed, from the time it is discovered or could have been discovered by the exercise of reasonable diligence." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *see generally Seureau*, 274 S.W.3d at 226 (stating cause of action for fraud accrues on date that defendant makes allegedly false representations). The same accrual date rule applies with respect to fraudulent inducement and fraud by omission or nondisclosure. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) ("Fraudulent inducement is a subspecies of fraud . . . [L]imitations does not start to run until the fraud with respect to the contract is discovered or the exercise of reasonable diligence would discover it"); *see generally Solutioneers Consulting, Ltd.*

52

*v. Gulf Greyhound Partners*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (stating fraud by omission or nondisclosure is subcategory of fraud).

Appellants asserted that Appellees committed fraud, fraudulent inducement, and fraud by nondisclosure by misrepresenting to Appellants that the plans and specifications requested for the Project bid were complete, and by failing to disclose to Appellants that the plans were not final, complete, or intended to be constructed as shown. Appellants further alleged that, had they known that the "bid plans and specifications [for the Project] were intended to be changed, were not complete and contained inaccuracies, [Appellants] would not have bid the Project at the costs it did."

Appellants also alleged that Appellees made misrepresentations to them after the Project began and "insisted work continue while representing an intention to pay for the continued performance, notwithstanding the added costs and delays." According to Appellants, Appellees misrepresented "to [Appellants] that they were aware of the extensive delays and were negotiating in good faith for payment adjustments to the Contract [Appellees] did not intend to perform." Appellants further alleged that:

> [H]ad [Appellees] not strung [Appellants] along to cause them to believe [Appellees] intended to pay for the delays, work would not have continued and the additional costs incurred could have been avoided. At all times [Appellees] knew or should have known that [Appellants] were relying upon, in good faith, [Appellees] impartiality in decisions on claims for additional costs. Further, upon information and belief, at

the time [Appellees] represented to [Appellants] that they were aware of the extensive delays and were negotiating in good faith for payment adjustments to the Contract, [Appellees] did not intend to perform.

For the reasons stated below, we find Appellants claims are barred.

Springwoods attached to its motion for summary judgment the original petition HCCI filed in the First Lawsuit on July 26, 2012. In that petition, HCCI alleged many of the same facts giving rise to Appellants' fraud claims in the Third Lawsuit. Royce Hassell, who is the owner and President of RHB and RHC, oversaw the claim resolution process and attended the July 2012 mediation on HCCI's behalf. He also hired HCCI's legal counsel and directed counsel to file HCCI's original petition in the First Lawsuit.

In the original petition filed in the First Lawsuit, HCCI alleged that the District and Springwoods solicited bids for the Project in 2011. After HCCI won the bid, it executed the Contract with Springwoods that included "the bid drawings [which were provided to HCCI as part of the bidding process] and specifications brought forward as the construction drawings and specifications (the 'drawings')." The drawings defined the scope of HCCI's work on the Project. HCCI alleged that it "notified Springwoods and the District [about] problems with the drawings" from the time HCCI began working on the Project, "Costello submitted construction drawings which contained unilateral revisions not made under the Contract," and

54

Springwoods and the District made "over five-hundred (500) such revisions to the drawings."  According to HCCI:

> Throughout the revisions to the drawings and the project, Springwoods and the District . . . have directed HCCI to perform the expanded Scope of Work without delay.

> Springwoods and the District . . . have required HCCI to perform more work in less time or in an accelerated manner which has resulted in material inefficiencies and loss of productivity.  Springwoods and the District . . . seek to unilaterally revoke, rescind or revise previously executed Change Orders without due compensation to HCCI.

HCCI alleged that it continued "to fully perform" and is "entitled to be paid for the full work performed and to be performed under the original scope of work and any agreed-to additional scope of work."  "Despite each such obligation, Springwoods has not paid HCCI all amounts due and owing."  HCCI further alleged that it "filed a series of claims for changes in the Contract Price and the Contract Time [that were necessitated by the revisions to the drawings] which Springwoods and the District asked to be treated as a consolidated claim."  According to HCCI:

> Springwoods and the District have refused to respond properly to HCCI's consolidated claim.  They have refused to meet with HCCI to discuss the details of HCCI's consolidated claim.  Springwoods and the District functionally refused to address HCCI's consolidated claim. Instead, they have simply deferred ruling, rather than making an impartial, good faith decision required under the Contract.

HCCI also alleged that:

> Springwoods and the District, moreover, now rely upon a pretext to try to defer further HCCI's consolidated claim.  Springwoods and the District now claim that they cannot decide HCCI's consolidated claim

55

because HCCI allegedly failed to respond to an earlier request by Costello to HCCI for HCCI to supply certain documents. Yet, HCCI has supplied, what even Springwoods and the District has characterized as, volumes of pages after the request by Costello. During that time that HCCI supplied its documents, neither Springwoods nor the District complained that HCCI failed to supply the documents requested by Costello. Further during that time, HCCI expressly requested Springwoods and the District to identify any problems with the documents submitted, and neither Springwoods nor the District identified any problem.

HCCI further alleged that the Contract contains "a mechanism for an impartial, unbiased, and independent Engineer to make decisions critical to HCCI's performance under the Contract." WPM and Costello, who were chosen by Springwoods and the District to serve as "independent Engineer[s]" for the Contract, were obligated to act in "good faith, impartially and without preference to Springwoods, the District or HCCI" when making "interpretations and changes in Contract Price and Contract Time, or both." HCCI relied "upon this agreed-to mechanism and [WPM's and Costello's] accompanying independent duties" and filed a consolidated claim pursuant to this process.

According to HCCI's petition filed in the First Lawsuit, HCCI "learned that this agreed-to mechanism has been and is illusory and non-existent" because "decisions submitted to an independent Engineer review involve the problems created by the revisions to the drawings prepared by [WPM and WPM] is principally motivated by the self-interest to try to cover-up or protect against its insufficient drawings." According to HCCI, WPM "cannot ever be impartial or unbiased

because of [this] fundamental conflict of interest" and "[i]t appears that Costello has preferred the perceived economic benefit of its other joint venture projects with [WPM] over its independent obligations" under the Contract.

The allegations HCCI made in its original petition filed in the First Lawsuit thus indicate that by July 26, 2012, Appellants believed Appellees had misrepresented to Appellants that: (1) the Project's bid drawings provided to HCCI as part of the bidding process were complete and final; (2) Appellees intended to pay Appellants for their continued work on the Project; and (3) Appellees were "negotiating in good faith for payment adjustments to the Contract." Appellants were also aware by July 26, 2012, of their purported injuries resulting from these alleged misrepresentations. *See Seureau*, 274 S.W.3d at 226 (stating cause of action for fraud accrues on date that defendant makes allegedly false representations). To the extent Appellants claim Appellees concealed any information concerning the scope of the Project causing them to bid on the Project to their detriment, HCCI's allegations in its July 26, 2012 petition also indicate that Appellants knew or should have known that the Project plans were not final, complete, or intended to be constructed as shown during the bidding process and that HCCI and RHB and RHC, as HCCI's alleged principals or partners, had been injured as a result of these substantial revisions. *See Woods*, 769 S.W.2d 515, 517 (stating cause of action for fraud accrues "when the fraud is perpetrated, or if the fraud is concealed, from the

time it is discovered or could have been discovered by the exercise of reasonable diligence").

The following communications between Royce Hassell, Springwoods, the District, WPM, and Costello between July 18, 2012, and September 12, 2012 also demonstrate that Appellants' fraud claims are time-barred because they accrued more than four years before Appellants filed the present suit in December 2016.

In a July 18, 2012 letter to Springwoods, the District, WPM, and Costello, Royce Hassell provided information about HCCI's post-mediation claims and requested data, compilations, engineering reports, analysis, and correspondence WPM and Costello provided to Springwoods and the District regarding HCCI's claims.[30] Royce Hassell also asked Springwoods and the District to explain "how they can have participated in mediation in good faith as required under the Article 16.01B of the Agreement since they were advised and assisted at mediation by Engineers who owe Hassell a duty of 'impartiality' in connection with any interpretations or decisions under the Agreement." Finally, he also requested that WPM and Costello be removed from the Project "for conflicts of interest associated with decisions under the Agreement in light of the plan deficiencies."

---

[30] This letter was included in the summary judgment record and was thus before the trial court when it ruled on Appellees' motions for summary judgment.

58

On August 1, 2012, Royce Hassell sent a letter to Springwoods and the District in which he addressed the District's request to waive mediation for a particular claim, stating that such a request "ignore[d] the purpose of the alternative dispute process in the contract which is intended to reduce the cost of litigation by encouraging settlement of disputes before litigation."[31] Royce Hassell noted, however, that "[a]t the same time, HCCI does not want to pursue a mediation claim which will just be a total waste of time like the [July 2012] mediation because of the posture assumed by the District and Springwoods."

On August 24, 2012, Royce Hassell sent a letter to Costello's Engineer Bill Zollman ("Zollman") in which he responded to Zollman's request for additional information regarding the claims HCCI submitted on July 18, 2012, and reiterated his prior requests for information.[32] Royce Hassell also stated that Springwoods and the District "still refuse to meet with us" and "[a]lthough we have no reason to believe that [Springwoods and the District] will change their uncommunicative posture, we still can hope that [Springwoods and the District] will join us and work under the terms of the construction agreement in an effort to try to resolve the current disputes like business parties."

---

[31] This letter was included in the summary judgment record and was thus before the trial court when it ruled on Appellees' motions for summary judgment.

[32] This letter was included in the summary judgment record and was thus before the trial court when it ruled on Appellees' motions for summary judgment.

On September 12, 2012, Royce Hassell emailed Zollman in response to Zollman's request for HCCI's "position on Contract Quality Adjustments."[33]  In his email, Royce Hassell noted that HCCI had been forced to file the First Lawsuit "because of [WPM's and Costello's] failure to impartially assess [HCCI's] claims (which would have allowed a fair resolution of [HCCI's] damages and increased costs)."  Royce Hassell stated that HCCI "does not agree that these contract quality adjustments take into account the delay, interruption, and interference costs to [HCCI] caused by the adjustments or the over 1500 plan revisions."  Royce Hassell further stated:

> As you are aware, the over 1500 plan revisions have caused [HCCI] to be on the project months after the work should have been completed at enormous losses and costs to us.  The contract adjustments do not take into account our daily rate for having our labor and equipment out on the project, our having to borrow funds from third parties to finance the project for [Springwoods and the District] because of [Springwoods' and the District's] refusal to pay us as agreed under the contract. . . .

Like the petition filed in the First Lawsuit on July 26, 2012, the July 18, 2012, August 1, 2012, and August 24, 2012 letters, and the September 12, 2012 email demonstrate that Appellants' fraud claims are time-barred.  These communications reflect that Appellants knew or should have known more than four years before they filed their original petition in the Third Lawsuit in December 2016, that Appellees

---

[33]  This email was included in the summary-judgment record and before the trial court when it ruled on Appellees' motions for summary judgment.

allegedly had misrepresented to Appellants, during the bidding process in 2011, that the Project plans set forth in the bid drawings were complete and final. Royce Hassell—who handled HCCI's claims and is the owner and president of RHC and RHB—also knew or should have known by no later than September 12, 2012 that Appellees allegedly had misrepresented to Appellants, after the Project began, that Appellees intended to pay for Appellants' work on the Project and were "negotiating in good faith for payment adjustments to the Contract" and that Appellants had been harmed by these misrepresentations. *See Woods*, 769 S.W.2d 515, 517 (stating cause of action for fraud accrues "when the fraud is perpetrated, or if the fraud is concealed, from the time it is discovered or could have been discovered by the exercise of reasonable diligence").

Appellants argue Appellees did not conclusively establish that their fraud, fraudulent inducement, and fraud by nondisclosure claims accrued more than four years before they filed suit on December 12, 2016, because Appellants worked on the Project until as late as December 28, 2012, and they submitted an application for payment in January 2013 for work on the Project they performed between October and December 2012. Appellants further contend that they were attempting to negotiate all their claims with Appellees until as late as March 2013. Even taking as true all evidence favorable to Appellants, indulging every reasonable inference in their favor, and resolving any doubts in Appellants' favor, as we must, this evidence

does not alter the fact that Appellants knew or should have known by July 26, 2012, or at the latest by September 12, 2012, that Springwoods and the District had not paid Appellants' payment claims as of that date, that Springwoods and the District negotiated the payment claims allegedly in bad faith, that Springwoods and the District were refusing to meet with HCCI, and that any future attempts to mediate Appellants' claims with Springwoods and the District would be, as Royce Hassell argued, futile. ("HCCI does not want to pursue a mediation claim which will just be a total waste of time like the [July 2012] mediation because of the posture assumed by the District and Springwoods.") That Appellants continued to work on the Project and incurred additional losses does not change these facts. *See Knott*, 128 S.W.3d at 221 (stating cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur").

Taking as true all evidence favorable to Appellants, indulging every reasonable inference in their favor, and resolving any doubts in Appellants' favor, as we must, we conclude Appellees established that Appellants discovered the alleged fraudulent conduct or could have discovered the alleged fraudulent conduct

with reasonable diligence by no later than September 12, 2012. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 833.[34]

We overrule Appellants' first issue with regard to their fraud, fraudulent inducement, fraud by nondisclosure, and conspiracy to defraud claims and we affirm the trial court's grant of summary judgment in Appellees' favor with respect to these claims.

## E.    Appellants' Assumpsit, Quantum-Meruit, and Unjust-Enrichment Claims

In their original petition, Appellants pleaded a combined claim for "assumpsit, quantum meruit, and unjust enrichment" against Springwoods, the District, and WPM alleging they owed Appellants "for the full value of the work performed" and seeking "to recover that full value of work less amounts, if any, already paid." Appellants also asked the court "to reform the Contract, imply a promise or render such relief to prevent the unjust enrichment of [Springwoods] and/or the District, to disgorge any ill-gotten enrichment, and to grant full restitution to Plaintiffs." They alleged that "[b]ased upon the foregoing facts and in the alternative, Defendants directed and required performance of a scope of work outside the scope of work

---

[34] Appellants did not challenge the trial court's summary judgment on their claim of conspiracy to commit fraud in their opening brief and therefore, this issue has been waived. *See Los Compadres Pescadores, L.L.C.*, 608 S.W.3d at 838 n.10 ("We need not address a new issue not raised by the appellant in the original brief."); *see also Champion*, 126 S.W.3d at 691–92 (declining to consider new issues raised in supplemental brief).

63

under the construction contract knowing that Plaintiffs expected to be paid for such work and would not have performed such work gratuitously. Plaintiffs performed the work as directed to the benefit of Defendants and to its detriment." Alternatively, Appellants alleged that "Defendants owe[d] Plaintiffs for the full value of the work performed. Plaintiffs sue to recover that full value of work less amounts, if any, already paid."

The related equitable theories of unjust enrichment, quantum meruit, and assumpsit generally allow restitution of benefits conferred on a party when it would be unjust for that party to retain them. *See generally Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (stating "quantum meruit is founded on unjust enrichment"); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (stating quantum-meruit theory of recovery "founded in the principle of unjust enrichment"); *Tri-State Chems., Inc. v. W. Organics, Inc.*, 83 S.W.3d 189, 194 (Tex. App.—Amarillo 2002, pet. denied) (stating quantum meruit is category of assumpsit). Although Appellants used the word "assumpsit" in their pleadings, they did not plead a claim for assumpsit. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008) ("[A]cause of action [for assumpsit] arises when money is paid for the use and benefit of another.") (citing *King v. Tubb*, 551 S.W.2d 436, 442 (Tex. Civ. App.—Corpus Christi 1977, no writ)). Thus, we construe Appellants' pleadings to allege

claims for quantum meruit and unjust enrichment. *See generally Tri-State Chems.*, 83 S.W.3d at 194 (stating "the substance of what is pled controls, not the label or name appended to the claim").

## 1. Unjust Enrichment

The statute of limitations for unjust enrichment is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *see Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam). In their motion for summary judgment, Appellees argued that Appellants' unjust enrichment claims accrued in July 2012 because Appellants knew by no later than the conclusion of parties' mediation on July 2, 2012, that they had sustained an injury and Appellees were not going to pay them in accordance with Appellants' damage calculations. *See Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 719 (Tex. App.—Dallas 2015, no pet.) (stating claim for unjust enrichment accrues "when facts come into existence that authorize a claimant to seek a judicial remedy") (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004)).

Appellees filed the Third Lawsuit on December 12, 2016. Thus, to avoid the applicable two-year statute of limitations, Appellees' claim for unjust enrichment had to accrue on or after December 12, 2014. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Elledge*, 240 S.W.3d at 871. In their response to the motions for summary judgment and in their appellate brief, Appellants argue that "for the same reasons

expressed above [with respect to their breach of contract claim], Defendants have not conclusively demonstrated that Plaintiffs knew by no later than July 2, 2012, that Plaintiffs would not recover all of their alleged costs."

On July 26, 2012, HCCI filed the First Lawsuit. In its petition, HCCI alleged claims for quantum meruit and unjust enrichment based on the same facts asserted by Appellants in the Third Lawsuit. On September 15, 2014, Royce Hassell and Appellants RHC and RHB, filed their First Petition in Intervention in the First Lawsuit in which they alleged their claims "ar[o]se from the claims" made by HCCI in the First Lawsuit.[35] Thus, the record reflects that Appellants had sufficient facts to seek a judicial remedy for unjust enrichment, at the earliest, on July 26, 2012, when HCCI filed the First Lawsuit, or at the latest on September 15, 2014, when RHC, RHB and Royce Hassell first attempted to intervene in the First Lawsuit. *See Clark*, 460 S.W.3d at 719 (stating claim for unjust enrichment accrues "when facts come into existence that authorize a claimant to seek a judicial remedy"). Because Appellants' claim for unjust enrichment accrued on or before September 15, 2014, the unjust enrichment claim filed by Appellants in the Third Lawsuit on December 12, 2016 is barred by the two-year statute of limitations. *See id.*

---

[35] The First Petition in Intervention also included as intervenors: R. Hassell Holding Company, Inc. and Sylvia Hassell.

## 2.    Quantum Meruit

Citing to *Vortt Exploration Company v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990), Springwoods argued in its motion for summary judgment that it was entitled to summary judgment on Appellants' quantum meruit claim because the Contract governed the services and materials Appellants provided with respect to the Project.  *Id.* at 944 ("Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."). The District and WPM adopted Springwoods' motion and moved for summary judgment on the same grounds, including the existence of an express contract covering the services or materials Appellants furnished.

Generally, the presence of an express contract bars recovery under quantum meruit.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see generally Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (stating "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory," such as unjust enrichment).  This rule not only applies when a plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when a plaintiff is seeking to recover "from a third party foreign to the original but who benefited from its performance."  *Pepi Corp.*, 254 S.W.3d at 462 (quoting *Hester v.*

67

*Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)).

Appellants argue that "[a]lthough a party may not recover on an express contract and a quantum meruit claim, parties are permitted to plead alternative theories of recovery, such as express contract and quantum meruit." While a plaintiff may plead alternative claims for breach of contract and quantum meruit, this does not alter the fact that a plaintiff cannot *recover* on its claim for quantum meruit if there is an express contract covering the subject matter of the parties' dispute. Thus, Appellants' argument is insufficient to raise a question of fact with respect to whether Appellants' quantum meruit claim is barred because the Contract covers the services and materials Appellants furnished. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 740.

Based on the record before us, we cannot say that the trial court abused its discretion by granting summary judgment in Appellees' favor on Appellants' quantum meruit claim based on the existence of an express contract. *See id.*

We overrule Appellants' first issue with regard to their assumpsit, quantum meruit, and unjust enrichment claims and we affirm the trial court's grant of summary judgment in Appellees' favor with respect to these claims.

**F.     Tolling of the Statute of Limitations**

Appellants argue on appeal that the statute of limitations for filing their claims was tolled by the automatic-stay provision of the United States Bankruptcy Code,[36] their petitions in intervention filed in the First Lawsuit, and the First Lawsuit itself.

**1.     Bankruptcy and Petitions in Intervention in First Lawsuit**

Appellees argue that because Appellants failed to plead tolling of the statute of limitations based on bankruptcy or the interventions filed in the First Lawsuit, they are precluded from making these arguments on appeal.  Although Appellants pleaded in their supplemental petition in the Third Lawsuit that the First Lawsuit tolled the running of limitations, Appellants did not assert that any bankruptcy proceeding or the petitions in intervention filed in the First Lawsuit tolled limitations until they filed their response to Appellees' motions for summary judgment.

Generally, a summary judgment movant is required to negate the application of a tolling provision only if the nonmovant asserts that a tolling provision applies in its pleadings.  *See Via Net*, 211 S.W.3d at 313.  If, however, an unpleaded tolling provision is raised for the first time in response to a motion for summary judgment and the movant responds to the defense on the merits without objecting, thereby effectively trying the issue by consent, the movant must negate application of the

---

[36]     Section 362 of the bankruptcy code automatically stays the continuation of a judicial action on a claim "against the debtor."  *See* 11 U.S.C.A. § 362.

tolling provision. *See id.* In this case, Appellees objected to Appellants' assertion that bankruptcy or the petitions in intervention filed in the First Lawsuit tolled the statute of limitations because Appellants had not alleged either ground for tolling in their pleadings and were raising the tolling defenses for the first time in their response to the motions for summary judgment.[37]

Because Appellants did not plead tolling of limitations based on any bankruptcy proceeding or their petitions in intervention filed in the First Lawsuit, and Appellees objected to the assertion of tolling on that basis, we conclude that these tolling defenses were not tried by consent and thus, Appellees were not required to negate either defense in order to meet their summary judgment burden. *See id.* (stating that when plaintiff asserted discovery rule for first time in its summary-judgment response, defendant "had two choices: it could object that the discovery rule had not been pleaded, or it could respond on the merits and try the issue by consent").

### 2. First Lawsuit

Appellees argued in their motions for summary judgment that the First Lawsuit had not tolled limitations on Appellants' claims because HCCI had voluntarily nonsuited its claims against the District and Springwoods. Appellants

---

[37]    After objecting, Springwoods also addressed the tolling defenses on the merits, out of an abundance of caution.

respond that HCCI's nonsuit was involuntary, and thus, the First Lawsuit tolled the running of limitations on their claims.

A voluntary nonsuit "extinguishes a case or controversy from the moment the motion [for nonsuit] is filed or an oral motion is made in open court" and it "renders the merits of the nonsuited case moot." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Thus, a lawsuit that is voluntarily nonsuited "does not interrupt the running of the statute of limitations." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.); *see also Cunningham v. Fox*, 879 S.W.2d 210, 212 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("A dismissal is the equivalent of a suit never having been filed. Therefore, if a suit is dismissed, the statute of limitations is not tolled for any new pleading filed.") (internal citation omitted). The statute of limitations may be tolled, however, if the abandonment of the suit is "sufficiently explained or accounted for so as to relieve it of being voluntary." *See Flatonia State Bank v. Sw. Life Ins. Co.*, 127 S.W.2d 188, 193 (Tex. 1939), *set aside on other grounds*, 133 Tex. 243, 128 S.W.2d 790 (1939) ("If the reason for such abandonment is sufficiently explained or accounted for so as to relieve it of being voluntary, the running of the statute is interrupted by the filing of the suit."); *see also Zurich Ins. Co. v. Northline Joint Venture*, No. 14-00-00090-CV, 2001 WL 1288830, at *3 (Tex. App.—Houston [14th Dist.] Oct. 25, 2001, pet. denied) (mem. op.) (citing *Flatonia State Bank*, 127 S.W.2d at 193).

71

It is undisputed that HCCI sued the District and Springwoods on July 26, 2012, based on their refusal to pay HCCI's claims for delay damages and that HCCI nonsuited its causes of action in the First Lawsuit on October 3, 2016. According to Appellants, HCCI's nonsuit was involuntary because HCCI was acting as their agent or partner in the First Lawsuit, the claims HCCI asserted in that suit were effectively theirs, and RHC did not authorize HCCI to nonsuit its claims or to take any other action. Citing to *Texas Mutual Insurance Company v. Ledbetter*, 251 S.W.3d 31 (Tex. 2008), RHC further contends that HCCI's nonsuit should not adversely impact its rights as a principal to the Contract or partner of HCCI for purposes of the Contract.

Appellants' arguments are not persuasive. Even assuming without deciding that HCCI was acting as RHC's and RHB's agent or partner in the First Lawsuit and that RHC and RHB did not consent to or authorize HCCI to nonsuit their claims, Appellants have not cited to any legal authority supporting the proposition that an agent's or partner's unauthorized conduct renders that act *involuntary* with respect to its principal or another partner.

Appellants also cite to *Ledbetter* for the proposition that, although a party has an absolute right to nonsuit its own claims, it may not nonsuit someone else's claims. *Ledbetter*, however, did not involve an alleged agent, principal, or partnership relationship between the nonsuiting party and the party whose interests in the suit

was allegedly affected. Rather, the issue in that tort case was whether a trial court was required to grant the plaintiffs' nonsuit and dismiss the plaintiffs from the suit, even though an insurance carrier had filed a petition in intervention seeking subrogation and a declaratory judgment regarding its duty to make payments to the plaintiffs in the future. *Ledbetter*, 251 S.W.3d at 37–38. Texas Rule of Civil Procedure 162, which governs nonsuits, states that "[a]ny dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." TEX. R. CIV. P. 162. The *Ledbetter* court held that the trial court abused its discretion by striking the petition in intervention because the carrier's subrogation claim was a claim for affirmative relief and Rule 162 "prohibits dismissal if the effect would be to prejudice any pending claim for affirmative relief, period." *Ledbetter*, 251 S.W.3d at 38–39. The court also reversed the trial court's dismissal of the plaintiffs from the litigation because the carrier's declaratory judgment claim could not be decided in their absence. *Id.* at 38 (citing TEX. CIV. PRAC. & REM. CODE § 37.006(a)). Thus, the facts of *Ledbetter* are not analogous.

Furthermore, RHC and RHB were not parties to the First Lawsuit. Although RHC and RHB filed petitions in intervention in the First Lawsuit, both petitions were struck. "[A]n intervenor is a party for purposes of appeal only if (1) [it] timely files a pleading, and (2) the trial court does not strike the pleading before the entry of a final judgment." *Johnston v. Crook*, 93 S.W.3d 263, 268 (Tex. App.—Houston

73

[14th Dist.] 2002, pet. denied). Because the trial court struck RHC's and RHB's petitions in intervention before it entered its final judgment, RHC and RHB were not parties to the First Lawsuit. *See id.* at 268–69 (holding interveners who "filed untimely pleas in intervention after judgment, were never parties and could not have appealed the judgment or dismissal of their pleas"). Thus, HCCI's nonsuit in the First Lawsuit did not violate Texas Rule of Civil Procedure 162 because RHC and RHB were not parties to the First Lawsuit and, thus, RHC and RHB did not have claims pending in that lawsuit. *See* TEX. R. CIV. P. 162 ("Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief.").

Appellants also suggest that HCCI's nonsuit was involuntary as to HCCI's own claims—which are now being asserted derivatively on its behalf by one of its purported shareholders, Royce Hassell—because Royce Hassell did not know about the nonsuit beforehand or authorize HCCI to take such action. Appellants, however, have not directed us to any legal authority supporting their position that a corporation's nonsuit is involuntary because one of its shareholders was unaware of the nonsuit beforehand or disagrees with the corporation's decision to nonsuit its claims.

We overrule Appellants' argument that the trial court abused its discretion by granting Appellees' motion for summary judgment based on the statute of

74

limitations because its claims were tolled by bankruptcy proceedings, RHC's and RHB's petitions in intervention filed in the First Lawsuit, or the First Lawsuit.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.